(Collins *v.* Smith.)

---

[PHILADELPHIA, FEBRUARY 20, 1841.]

## CUMMING *against* GARSIDE.

### IN ERROR.

1. In an action to recover the price of machinery made by the plaintiff for the defendant, where the defence and evidence are that the machinery is defective, if the defendant have procured the machinery to be made good, the time necessarily lost in the process, unless so small as to fall within the maxim *de minimis*, &c., would be a legitimate subject of compensation; though time lost by working on with it in a defective condition would not be.

2. If the court below have erred in respect to the measure of damages, yet, if the jury give no damages at all, this court will not reverse for such error.

ERROR to the District Court for the City and County of Philadelphia.

Assumpsit by Joseph Garside against Charles Cumming, upon a promissory note, made by the defendant, dated the 13th of February, 1837, at six months, to the order of Garside & Mecutcheon, for $354, and endorsed by them.

The plaintiff was one of the firm of Garside & Mecutcheon.

On the trial before JONES, J., on the 5th of February, 1840, the endorsement was proved to be in the handwriting of the plaintiff.

(Cumming v. Garside.)

Arundius Tiers, a witness for the plaintiff, testified that the note was given by the defendant in renewal of another, drawn by him in favour of Garside & Mecutcheon.

John Bullock, a witness for the defendant, said :—"I was present at the time the first note was given. Defendant refused to give it on account of the machinery built for him by Garside & Mecutcheon; as it was overrated. Mecutcheon then said it would be a great accommodation to him if defendant would loan him his note; he would take it up when due. I took a receipt at the bottom of the bill, in which this agreement was stated." [The bill referred to by the witness was produced by the defendant, at the call of the plaintiff, and was annexed to the bill of exceptions.] Being cross-examined, the witness said : " The plaintiff was not present at the time ; Mecutcheon was." And being re-examined, he said : "I was at that time the defendant's foreman; I took charge of the books; Garside & Mecutcheon had been making drums for driving curled hair machinery for the defendant. The defendant has subsequently used the machinery for various purposes. It was frequently out of order, and often broke." Being again cross-examined—" I recollect calling on the plaintiff about lifting this note. I had received a notice, in Mr. Cumming's absence, about the note. I called on the plaintiff about taking it up, according to the receipt at the bottom of the bill."

James Wray being then called, deposed that he had not seen the machinery made ; that he worked in Mr. Cumming's factory, renting the part in which he worked since April, 1838; there might be half a dozen drums ; there might be more in the factory. He had an attachment to four of these drums.

John Bullock being called again, said : " The drums were put there in the latter part of 1836. The drums to which Wray alludes must be the same made by Garside & Mecutcheon. I know it, because I worked there the whole time. Garside & Mecutcheon made the drums, repaired a picker, and put up a governor." Cross-examined : " I left there in April, 1839. I know that when Wray first came there the drums he attached to were those made by Garside & Mecutcheon. The governor was faulty."

James Wray then continued : " Soon after I came there, the drums gave way. They had wooden screws instead of iron bolts. I had to take them and get two inch thick bolts through them to make them sufficient. It was about twice a week, for six weeks, in that way. I think Mr. Cumming sustained loss. I paid him five dollars a day, and I lost fifteen or twenty days." Cross-examined.

"Mr. Cumming could have seen the defects, if he had examined them, and been a judge."

Arundius Tiers being again called by the plaintiff, said: "This note was given in renewal of another note. I won't say it was protested; there was a hundred dollars paid at the time, and Mr. Cumming promised to pay the note at maturity. Cumming said the note had been given to Garside & Mecutcheon. He made some apologies for failing to take up the former note, and promised that if the new note was given, he would take it up." Cross-examined. "This conversation was at our counting-house. I know Cumming was the man. The conversation arose from his not taking the note up. The conversations were such as to imply that Garside & Mecutcheon had been at work for Mr. Cumming. John Bullock was not there at that time. I can't say who paid the money, or by whom it was received. I did not see the money paid. I recollect the note was to be renewed, and the difference was to be paid, but I did not see it paid. I remember that Cumming promised to pay this note at maturity, if Garside would take it."

John Gilbert, being called by the plaintiff, testified that he was employed by Garside & Mecutcheon to put up the shafting for the defendant, and that it was done in a workmanlike manner. Whether wood screws were used or not, depended upon the power applied to them.

The court, after stating the case, and commenting on the evidence, charged the jury, that if they should think the note was given for the work (and not merely as an accommodation) they would then consider whether the work was good and sufficient, or whether it was defective; and proceeded thus: "If you should find that the work was defective, then you will consider how far it was defective, and decide from the evidence, as nearly as you can, what expense and trouble it would cost to make the work good and substantial as it ought to be. This is the utmost the defendant can require, because it appears he kept the machinery. It would not be lawful to allow damages for lost time in the use of the machinery, or for the loss of Wray's rent. That would not be a proper measure of damages; because a few dollars expended might have made the drums and the other work good and sufficient."

To this direction, as to the measure of damages which the defendant might set off, the defendant excepted, and the judge sealed a bill of exceptions.

The jury found a verdict for the plaintiff, for the principal and interest of the note, upon which this writ of error was taken.

The following error was assigned.

(Cumming *v.* Garside.)

" The judge below erred in charging the jury that 'it would not be lawful to allow damages for lost time in the use of the machinery, or for the loss of Wray's rent; and that would not be a proper measure of damage, because a few dollars expended might have made the drums and the other work good and sufficient.'"

Mr. *Markland* for the plaintiff in error cited *Wilt* v. *Vickers,* (8 *Watts,* 227.) *Dewint* v. *Wiltse,* (9 *Wend.* 325.)  *Sayre Dam.* 52. *Ld. Rayd,* 77.  3 *Peters,* 85.  1 *Gallis.* 315.

Mr. *Kennedy* contra, referrred to *Street* v. *Blay,* (2 *Barn. & Ad.* 456; 22 *Eng. Com. Law Rep.* 122.)

Per Curiam.—Perhaps the rule of damages stated to the jury was not critically correct.  Had the defendant procured the machinery to be made good, the time necessarily lost in the process, unless so small as to fall within the maxim *de minimis,* would have been a legitimate subject of compensation; though time lost by working on with it in a defective condition, would not.  The inaccuracy, however, was not only trivial in itself, but unproductive of the smallest injury.  The jury gave the plaintiff his whole demand; and they consequently allowed the defendant no damages at all.  The misdirection, if so it may be called, in regard to the measure of compensation, was therefore without consequences; and that we never reverse for an error clearly unattended with actual prejudice, was determined in *Campbell* v. *Calhoun,* (1 *Penn. Rep.* 140,) and *Johnston* v. *Brackbill,* (*Id.* 370.)

Judgment affirmed.